UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

TRUIST BANK, formerly known as )
BRANCH BANKING AND TRUST )
COMPANY )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　*Plaintiff* )
　　　　　　　　　　　　　　　　　　　　)
v. 　　　　　　　　　　　　　　　　　　)　　Case No.: 2:20-cv-00139
　　　　　　　　　　　　　　　　　　　　)
MICKEY FARMER; JEANNE )
FARMER; CODY FARMER; and )
REGINA FARMER )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　*Defendants* )

## VERIFIED COMPLAINT

Truist Bank, formerly known as Branch Banking and Trust Company (the "Bank") by counsel, and pursuant to W. Va. Code § 40-1A-1, *et. seq.*, respectfully moves this Court for entry of an Order avoiding several transfers of property by and among a number of the Defendants. In support thereof, the Bank states as follows:

### I. THE PARTIES

1. Truist Bank, formerly known as Branch Banking and Trust Company (the "Bank") is a North Carolina banking corporation authorized to conduct business in the Commonwealth of Virginia.

2. Mickey Farmer is an individual and current resident of the Commonwealth of Kentucky.

3. Mickey Farmer still owns real property in the State of West Virginia and was a resident of the State of West Virginia when the loan transactions set forth herein were originated.

1

4. Mickey Farmer's last known address is 305 Brindle Way, Nancy, Kentucky 42544.

5. Jeanne Farmer is an individual and current resident of the Commonwealth of Kentucky.

6. Jeanne Farmer's last known address is 305 Brindle Way, Nancy, Kentucky 42544.

7. Jeanne Farmer still owns real property in the State of West Virginia and was a resident of the State of West Virginia when the loan transactions set forth herein were originated.

8. Cody Farmer is, upon information and belief, a resident of the State of West Virginia.

9. Cody Farmer's last known address is 67 Renee Drive, Elkview, WV 25071.

10. Regina Farmer is, upon information and belief, a resident of the State of West Virginia.

11. Regina Farmer's last known address is 67 Renee Drive, Elkview, WV 25071.

## II.  JURISDICTION AND VENUE

12. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and it is between citizens of different States.

13. This Court has personal jurisdiction over Mickey Farmer and Jeanne Farmer under the West Virginia long-arm statute because they own real property at 67 Renee Drive, Elkview, WV 25071, and because the underlying loan transactions set forth herein originated at a Charleston, WV branch of the Bank.

14. This Court has personal jurisdiction over Cody and Regina Farmer because they are residents of Elkview, West Virginia.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), since a substantial part of the events or omissions giving rise to the claim occurred in this District.

### III. THE LOAN TRANSACTIONS AND JUDGMENT

16. Between June 24, 2013, and February 9, 2018, Capitol Valley Contracting, Inc. ("Capitol Valley"), executed at least seven promissory notes payable to the Bank.

17. Mickey and Jeanne Farmer (the "Obligors") each executed personal Guaranty Agreements for each of those notes, thereby standing behind the indebtedness of Capitol Valley.

18. When each of the notes and guaranty agreements were signed, the Obligors lived in Kanawha County, West Virginia.

19. Moreover, Capitol Valley, which was owned and controlled by Mickey Farmer, had its principal place of business in Kanawha County, West Virginia, at all relevant times.

20. Based on a default in payment under the notes and guaranty agreements, the Bank obtained a judgment against Capitol Valley and the Obligors in State Court in Kanawha County, West Virginia, on October 1, 2019, for the principal sum of $727,785.89, together with accrued and unpaid interest of $31,618.15 through March 5, 2019, fees and other charges of $12,378.56 through March 5, 2019, interest on the principal sum at the West Virginia State judgment rate from March 6, 2019, until paid, and costs incurred (the "State Court Judgment").

21. A true and accurate copy of the State Court Judgment is attached as **Exhibit A**.

22. The State Court Judgments were subsequently docketed as judgment liens in both Wayne and Pulaski Counties in Kentucky.

23. True and accurate copies of the docketed judgment liens are attached collectively as **Exhibit B**.

24. Additionally, to the extent of personal property transfers set forth herein, the Bank, at all relevant times, had a common law setoff right and a contractual setoff right and security interest in bank accounts held at the Bank.

25. As a result, the Bank has an interest in all real and personal property of the Obligors and their transferees as set forth herein.

### IV.    OBLIGORS' DEFAULTS

26. As set forth above, the State Court Judgment arose out of multiple loan transactions originating between 2013 and 2016 between Capitol Valley, the Obligors, and the Bank.

27. Upon information and belief, during the second half of 2017, the Obligors became aware that they would be unable to meet their debt obligations under the underlying notes.

28. Further, the Bank began making phone calls and sending default notices in 2018 to the Obligors concerning material ongoing defaults under those loans.

29. The Bank engaged counsel in August 2018 to protect its rights under the various loan documents.

30. As a result of that engagement, counsel sent its first Notice of Default and Demand for Payment on September 4, 2018.

31. A true and accurate copy of the Notice is attached hereto as **Exhibit C**.

## V. REAL PROPERTY TRANSFERS

32. Between June 2015 and July 2017, the Obligors began siphoning funds from Capitol Valley that was intended for business use and should have been earmarked for repayment of the debt obligations into their personal accounts to fund the purchase of numerous lots via seven different deeds as follows:

   a) by Deed dated June 24, 2015, the Obligors acquired .50 acres in Jabez, Kentucky;

   b) by Deed dated August 15, 2015, the Obligors acquired another .66 acres in Jabez, Kentucky (the first two properties are referred to as the "Jabez Lots");

   c) by Deed dated July 1, 2016, the Obligors acquired Lots 75, 76, and 77 in Bridlebrook Estates;

   d) by Deed dated September 12, 2016, the Obligors acquired Lot 74 and part of lot 73 in Bridlebrook Estates (the lots in Bridlebook are collectively referred to as the "Bridlebrook Property");

   e) by Deed dated January 5, 2017, the Obligors acquired Lots 94, 95, 96, 97, 98, 102, and part of lots 93, 99, 100, and the loop portion of Pleasant View Road (the "Pleasant View Property");

   f) by Deed dated January 1, 2017, the Obligors acquired Lots 78, 79, 80, 81, and former Bridle Brook Point (the "Bridlebrook Point Property"); and

   g) by Deed dated July 2017, the Obligors acquired Lots 40-42, 66-71, part of lot 73, and all of Saddle Point Crest Road (the "Saddlepoint Property") (collectively, the "Kentucky Real Property").

33. Then, on August 22, 2018, the Obligors transferred a 60% interest (30% each) in the Bridlebrook Property to Cody Farmer and Regina Farmer (the "Real Property Transferees").

34. True and accurate copies of the deeds transferring the interest to the Real Property Transferees are attached collectively as **Exhibit D**.

35. Upon information and belief, the Bridlebrook Property has a value of at least $162,500.00.

36. Upon information and belief, the Obligors received no value in exchange for the transfer of the Property.

37. Upon information and belief, the Obligors made these transfers when they were insolvent.

38. Upon information and belief, the Obligors made these transfers for the specific purpose of defrauding, delaying, frustrating, or otherwise avoiding the reach of their creditors, including the Bank.

39. The Obligors, in fact, made the transfers when they knew that Capitol Valley and the Obligors had defaulted on their obligations to the Bank and would be unable to pay the debt in full.

40. Moreover, the Real Property Transferees are the children of the Obligors.

### VI. THE PERSONAL PROPERTY TRANSFERS

41. In addition to the transfer of real property as set forth above, the Obligors also transferred certain personal property to their adult children.

42. In September 2017, for example, Mickey Farmer funded the purchase of a 2018 Jaguar F-Pace for Cody Farmer, and, since that date, Mickey Farmer has used funds

both from accounts with the Bank (on which the Bank had, at all relevant times, common law setoff and lien rights) and otherwise to pay at least $24,004.08 towards that purchase.

43. Additionally, on June 20, 2018, Mickey Farmer drew an official check in certified funds and transferred $64,000.00 to Regina Farmer.

44. These funds were obtained from accounts at the Bank on which the Bank had common law setoff and lien rights.

45. In both instances, Mickey Farmer made the transfers knowing he was unable to meet his obligations to the Bank.

46. Upon information and belief, in both instances, Mickey Farmer did not receive value for the transfer.

47. Upon information and belief, in both instances, Mickey Farmer made these transfers when he was insolvent.

48. Mickey Farmer made both of these transfers to his adult children.

49. Finally, Mickey Farmer made both transfers for the specific purpose of defrauding, delaying, frustrating, or otherwise avoiding the reach of their creditors, including the Bank.

### VII. FRAUDULENT OR OTHERWISE AVOIDABLE TRANSFERS

50. The allegations set forth in Paragraphs 1 through 49 above are incorporated by reference as if fully set forth herein.

51. Each of the transfers identified above was made by the Obligors with actual intent to hinder, delay or defraud the Bank.

52. Each of the transfers identified above was made by the Obligors without receiving a reasonably equivalent value in exchange.

53. Each of the transfers identified above left the Obligors with insufficient assets to meet their liabilities to the Bank.

54. Each of the transfers identified above was made by the Obligors to their adult children at a time when the Obligors knew that they were in default of the obligations to the Bank.

55. The Bank had or holds a valid lien against the property transferred as described above.

WHEREFORE, Truist Bank, formerly known as Branch Banking and Trust Company, by counsel, respectfully moves this Court for entry of an order granting to it the following relief:

A. Avoiding each of the transfers identified above;

B. Attaching the Bank's judgment lien against the interest in the real property and personal property held by the transferees as identified above such that the Bank may levy against it;

C. Enjoining the transferees from further transfer of disposition of their interest in the real and personal property identified above;

D. Alternatively, awarding a money judgment against the transferees for any property transferred to a third party prior to the entry of an Order in this case; and

E. For any further relief this Court may believe is just under the circumstances.

DATED: February 19, 2020

TRUIST BANK, formerly known as
BRANCH BANKING AND TRUST
COMPANY

By: /s/ Travis A. Knobbe
Counsel
Spilman Thomas & Battle, PLLC
Travis A. Knobbe (WVSB #13123)
One Oxford Centre, Suite 3440
301 Grant Street

Pittsburgh, PA 15219
T: 412.325.3311
F: 412.325.3324
E-mail: tknobbe@spilmanlaw.com

*Counsel for Truist Bank*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | |
|---|---|
| **TRUIST BANK, formerly known as BRANCH BANKING AND TRUST COMPANY** | )<br>)<br>)<br>) |
| *Plaintiff* | )<br>) |
| v. | ) Case No.: 2:20-cv-00139 |
| **MICKEY FARMER; JEANNE FARMER; CODY FARMER; and REGINA FARMER** | )<br>)<br>)<br>) |
| *Defendants* | ) |

## VERIFICATION

I, Steve Blevins, Senior Vice President and Authorized Agent of Branch Banking and Trust Company, do hereby verify under penalty of perjury, that the allegations set forth in the Complaint to which this verification is attached are true and correct to the best of my information, knowledge, and belief.

_____
Steve Blevins, Senior Vice President
Truist Bank, formerly known as
Branch Banking and Trust Company

Taken, sworn to, and subscribed before me this 18th day of February, 2020.

_____
Notary Public

*[Notary Seal: LESLIE GARNER DAVIS, NOTARY PUBLIC, MOORE COUNTY, NC]*