IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TRUIST BANK

          Plaintiff,

v.                                              CIVIL ACTION NO.  2:20-cv-00139

MICKEY FARMER, et al.,

          Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff Truist Bank's Motion for Summary Judgment. [ECF No. 15]. Defendants have responded [ECF No. 17] and Plaintiff has replied [ECF No. 18]. The motion is now ripe for consideration. For the reasons that follow, the motion is **GRANTED**.

I.    Material Facts

Defendant Mickey Farmer owned Capitol Valley Contracting, Inc., ("Capitol Valley") in Kanawha County, West Virginia. Between June 24, 2013, and February 9, 2018, Capitol Valley executed at least seven promissory notes payable to Plaintiff Truist Bank. Mickey Farmer and his wife, Jeanna Farmer, each executed personal Guaranty Agreements for those promissory notes. Capitol Valley, Mr. Farmer, and Mrs. Farmer defaulted on the notes in July 2018 and Capitol Valley ceased operations. Around that same time, Mr. and Mrs. Farmer moved out of the state of West Virginia to property Mickey Farmer owned in Kentucky. Based on the default, Truist obtained a judgment in state court against Capitol Valley, Mr. Farmer, and Mrs. Farmer for $771,782.60 on October 1, 2019. The judgment was later docketed as

a judgment lien in both Wayne and Pulaski Counties in Kentucky, where Mickey Farmer owns real property.

To date, Truist has recovered only a small fraction of the judgment against Mr. and Mrs. Farmer. To that end, Truist now seeks to avoid three separate transfers made by Mr. and Mrs. Farmer to their daughter, Regina Farmer, and son, Cody Farmer.[1]

First, Truist seeks to avoid a transfer of $64,000 that Mickey Farmer made to Regina Farmer on June 20, 2018. Truist alleges, and Mr. and Mrs. Farmer admit, that Mickey Farmer "drew an official check in certified funds" when he made this transfer to Regina Farmer. [ECF No. 1, at ¶ 43; ECF No. 8 at ¶ 17]. Importantly, the $64,000 transfer occurred just prior to Mr. and Mrs. Farmer's default. According to Mr. and Mrs. Farmer, the transfer was not a gift. Rather, Mr. and Mrs. Farmer contend that Mickey Farmer was repaying Regina Farmer "money loaned to the company." [ECF No. 17, at 2]. This contention is unsupported. The record does not include any evidence that Regina Farmer loaned money to Capitol Valley.

Next, Truist seeks to avoid two separate but related transfers of real property. Truist alleges, and Mr. and Mrs. Farmer admit, that between June 2015 and July 2017, Mr. and Mrs. Farmer obtained numerous lots of real property. Relevant here, in July and September 2016, Mr. and Mrs. Farmer acquired five lots in Bridlebrook Estates in Wayne County, Kentucky (the "Bridlebrook Property"). On August 22, 2018, just one month after the default, Mr. and Mrs. Farmer transferred a 30% interest in the Bridlebrook Property to Regina Farmer, and a 30% interest to Cody

---

[1] In its Complaint [ECF No. 1], Truist also sought to avoid the transfer of a 2018 Jaguar F-Pace purchased by Cody Farmer with funds from Mickey Farmer. Truist has since withdrawn that claim [ECF No. 21, at 3], and it is hereby DISMISSED.

Farmer. Mr. and Mrs. Farmer retain the remaining 40% interest in the property. Regina Farmer and Cody Farmer contend that they did provide value for the transfers by contributing "money and work on th[e] property." [ECF Nos. 7, 9]. But the deeds of transfer are clear—the transfers were made "for and in consideration of [Mr. and Mrs. Farmer's] love and affection for [Regina and Cody] with no monetary consideration." [ECF No. 1-4, at 1, 5, 11, 15].

II. Legal Standard

A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. A court "may grant summary judgment only if, taking the facts in the best light for the nonmoving party, no material facts are disputed and the moving party is entitled to judgment as a matter of law." *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Although the court will view all underlying facts and inferences in the light most

favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256.

### B. West Virginia Uniform Fraudulent Transfers Act

West Virginia Code § 40-1A-1, *et. seq*, "protects creditors against two kinds of fraudulent transfers: transfers with an actual intent to defraud and transfers that the law considers fraudulent (i.e., constructive fraud)." *Johnson v. Pinson*, 854 S.E.2d 225, 232 (W. Va. 2020). "Constructive fraud is based on facts and circumstances which courts have said constitute legal fraud, regardless of actual intent." *Id.* (internal quotation marks omitted) (citation omitted).

West Virginia Code § 40-1A-4 provides, in relevant part, that constructive fraud exists as to present and future creditors when a debtor makes a transfer or incurs an obligation "without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor . . . was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." W. Va. Code § 40-1A-4(a)(2). Likewise, West Virginia Code § 40-1A-5(a) provides that a transfer is fraudulent as to a present creditor when "the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time."

In cases of actual fraud, rather than constructive fraud, West Virginia Code § 40-1A-4(b) provides a non-exhaustive list of factors for courts to consider. Those factors include whether the transfer was made to an insider, whether the debtor retained possession or control over the property, whether the debtor had been

4

threatened with suit before the transfer, whether the debtor received reasonably equivalent value in exchange, and whether the debtor was insolvent at the time of the transfer or became insolvent shortly thereafter. *See* W. Va. Code §§ 40-1A-4(b)(1)–(11).

A debtor, "a person who is liable on a claim," *id.* § 40-1A-1(f), is presumed to be insolvent if he or she "is generally not paying his or her debts as they become due," *id.* § 40-1A-2(b). A "'transfer' means every mode . . . of disposing of or parting with an asset or an interest in an asset, and includes payment of money." *Id.* § 40-1A-1(p). An "asset" means "property of a debtor" with the exclusion of certain property not relevant here. *Id.* § 40-1A-1(b). Further, a "claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* § 40-1A-1(c). If a creditor succeeds in showing a transfer is fraudulent, the creditor may obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim," "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee," or "[a]ny other relief the circumstances may require." *Id.* § 40-1A-7. "The judgment may be entered against . . . [t]he first transferee of the asset." *Id.* § 40-1A-8(b).

### III. Discussion

Truist seeks to avoid the $64,000 transfer to Regina Farmer and the transfers of interest in the Bridlebrook Property from Mr. and Mrs. Farmer to Regina and Cody Farmer. Truist requests I void the deeds transferring the Bridlebrook Property; confirm that the judgment lien attaches to the Bridlebrook property as of the date it

5

was recorded in Wayne County, Kentucky; and require Regina Farmer to repay the $64,000 to Truist.

In considering this motion for summary judgment, I must first determine whether there is a genuine dispute of material fact. I find that the material facts, set forth above, are not genuinely disputed. Truist met its burden of establishing the absence of any genuine issue by attaching and citing to supporting documents in its motion. Though the Farmers dispute other facts not included here because they are immaterial, they do not provide any proof that the material facts are genuinely disputed. While Mr. and Mrs. Farmer claim they received reasonably equivalent value in exchange for the transfers, their contentions are unsupported and amount to nothing more than mere allegations. Therefore, I **FIND** that there is no genuine dispute of material fact.

Next, I must determine whether Truist is entitled to judgment as a matter of law—that is, whether the transfers at issue were fraudulent. As explained above, a transfer can constitute constructive fraud as to a present creditor if it was (1) made without receiving a reasonably equivalent value in exchange and (2) the debtor was insolvent at the time of the transfer, W. Va. Code § 40-1A-5, or "the debtor . . . was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," § 40-1A-4(a)(2). A transfer is also fraudulent if it was made with actual intent to defraud a creditor. *Id.* § 40-1A-4(a)(1).

### A. The $64,000 Transfer

First, I find that Mickey Farmer did not receive reasonably equivalent value in exchange for the $64,000. As I have explained, Mr. and Mrs. Farmer's contention

6

that the transfer was a repayment of money loaned to Capitol Valley is unsupported. Therefore, there is no evidence that Mr. and Mrs. Farmer received any value in exchange for the transfer.

Next, I must determine whether either of the provisions related to constructive fraud apply. Mickey Farmer is the debtor because he was responsible for the debts owed to Truist. Mickey Farmer did not become insolvent by missing a payment until July 2018. Therefore, § 40-1A-5 does not apply because Mickey Farmer was not insolvent at the time the transfer was made on June 20, 2018. However, I find that § 40-1A-4(a)(2) is applicable here. At the time Mickey Farmer made the $64,000 transfer, he was engaged in a business, Capitol Valley, for which his remaining assets were unreasonably small. This is evidenced by the fact that Mickey Farmer became insolvent and permanently closed Capitol Valley immediately after making the transfer. Therefore, I **FIND** that the $64,000 transfer is constructively fraudulent and avoidable.

### B. The Bridlebrook Property Transfers[2]

I find that Mr. and Mrs. Farmer did not receive reasonably equivalent value in exchange for the transfers of interest in the Bridlebrook Property. Though the Farmers claim now that Regina and Cody Farmer contributed money and work on the property, the deeds make clear that the transfers were only "for and in consideration of [Mr. and Mrs. Farmer's] love and affection for [Regina and Cody] with no monetary consideration." [ECF No. 1-4, at 1, 5, 11, 15]. According to the deeds, "for evaluation purposes the interest in the property . . . is valued at" $90,750 for Regina Farmer and $90,750 for Cody Farmer. *See id.* Love and affection, while

---

[2] Because these transfers are factually indistinguishable, I consider them together.

nice, does not constitute reasonably equivalent value in exchange for the property at issue.

Next, I find that the transfers were constructively fraudulent pursuant to West Virginia Code § 40-1A-5. The Bridlebrook Property transfers took place on August 22, 2018. Mr. and Mrs. Farmer had become insolvent by failing to pay their debts as they came due in July 2018. Therefore, Mr. and Mrs. Farmer were insolvent at the time of the transfers. I **FIND** that the transfers of the Bridlebrook Property are fraudulent and avoidable.

## IV. Conclusion

For the foregoing reasons, I find that Plaintiff Truist Bank is entitled to summary judgment in its favor. Because the transfers of the Bridlebrook Property were fraudulent and avoidable, I **ORDER** that the deeds be voided and confirm that the judgment lien attaches to the Bridlebrook Property as of the date it was recorded in Wayne County, Kentucky. I further **ORDER** that Regina Farmer repay the $64,000 that was fraudulently transferred to her, to Truist Bank. Truist Bank's Motion for Summary Judgment [ECF No. 15] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 2, 2021

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE